JULIUS A. HAYDEN, plaintiff in error, *vs.* JAMES C. ANDER-
SON *et al.*, defendants in error.

1. A stay-bond binds the property of the security from the date of its execu-
tion.

2. Where the claimant purchased property from one of the securities, after
the execution of the stay-bond, through his agents, who were co-securities
with the vendor, he was affected with notice of the lien on such property
arising from the making of said bond.

3. The holder of the legal title must claim; therefore, the transferree of a
bond for titles, all the purchase money not having been paid for the prop-
erty covered thereby, cannot protect his interest by claim.

4. Where the verdict in an equity cause found for complainants a specific
sum of money, a decree by the chancellor, simply adopting and approving
the verdict of the jury, though informal, was not illegal.

Stay-bonds. Lien. Principal and agent. Notice. Claim.
Decree. Before Judge BARTLETT. Morgan Superior Court.
March Term, 1876.

The following, taken in connection with the decision, suffi-
ciently reports this case:

A part of the realty levied on was claimed under the fol-
lowing chain of title: 1st. A deed from E. W. Thrasher to
J. J. Thrasher, dated November 27th, 1874. 2d. A bond for
title from J. J. Thrasher to W. L. Thrasher, dated Decem-
ber 7th, 1874. 3d. An assignment of this bond by W. L.
Thrasher to J. A. Hayden, dated June 2d, 1875.

COLLIER & COLLIER; E. N. BROYLES; THRASHER &
THRASHER, for plaintiff in error.

REESE & REESE, for defendants.

WARNER, Chief Justice.

This was a claim case, on the trial of which the jury found
the property subject to the execution levied thereon. The
claimant made a motion for a new trial on the various grounds
therein set forth, which was overruled by the court, and the
claimant excepted.

Two of the main grounds of error insisted on here were, that the court erred in not ruling out as evidence the plaintiffs' *fi. fa.*, and the decree on which it issued, on the ground that no valid decree had been entered up in the case, and also that the court erred in holding that the bond signed by W. L. Thrasher, as security on the stay of execution, was, in law, a good statutory stay-bond, and created a lien on his property from the date of the execution thereof. It appears from the evidence in the record that the jury, on the trial of the equity cause, found and decreed in favor of the complainants against the defendant a certain specified sum of money, which was fully and specially set forth in the verdict.

The chancellor made and signed the following on the 12th of May, 1875: "Upon hearing and considering the foregoing verdict and decree of the jury, it is adjudged and decreed that the same is hereby adopted and approved, and is now signed by me." The bond for the stay of execution entered on the minutes of the court, and signed by the respective parties named therein, was as follows, to-wit: "James C. Anderson *et al. vs.* Early W. Thrasher, executor of Barton Thrasher, deceased. Verdict and decree for the complainants for $10,000 00, principal and costs, against E. W. Thrasher, individually. The defendant in the above stated case comes forward and demands a stay of execution according to the statute in such cases made and provided, and brings Albert M. Thrasher, Wilson L. Thrasher, and the firm of Thrasher & Thrasher, composed of Barton H. Thrasher and Albert M. Thrasher, and tenders them as his securities; and they, the said Early W. Thrasher, Albert M. Thrasher, Wilson L. Thrasher, and Thrasher & Thrasher, acknowledge themselves jointly and severally bound unto James C. Anderson *et al.*, complainants in the above stated case, for the payment of the said verdict, and decree, and costs, in said cause. In testimony whereof, the said Early W. Thrasher, Albert M. Thrasher, Wilson L. Thrasher, and Thrasher & Thrasher, have hereunto set their hands and affixed their seals, this 12th

Hayden *vs.* Anderson *et al.*

of May, 1875. Approved: E. Heyser, clerk." The claimant claims title to the property levied on under deeds conveying the same to him by the defendants, and an assignment of a bond for titles to a portion of the property, all executed on the 2d day of June, 1875, and one of the questions is, whether the property of W. L. Thrasher, one of the securities on the stay of execution, was bound for the payment of the judgment in the case in which the execution was stayed, from the date of the stay-bond signed by him?

1. By the judiciary act of 1799, the property of the defendant was bound from the signing of the judgment, but the defendant against whom such judgment was entered might, within four days from the adjournment of the court, enter good and sufficient security, either in open court or in the clerk's office, for the payment of said judgment and costs, within sixty days, and if such party shall not pay the same agreeable thereto, execution may issue against such party and the security, without any other proceeding thereon. Such has been the law of this state from 1799 up to the present time: See Code, sections 3661, 3662. The uniform construction which has been given to this statute, so far as is known or believed, from the time of its enactment in 1799 up to this day, has been that the property of the security on the stay of execution was bound for the payment of the judgment from the date of the stay-bond signed by him. But it is said that the statute does not declare that the stay-bond shall constitute a lien on the property of the security. The act of 1799, however, declares that the property of the defendant in the judgment shall be bound from the signing thereof, and that execution may issue against him and the security, without any other proceeding thereon. If it was not intended that the property of the security on the stay of execution should be bound for the payment of the judgment in the same manner as the property of the defendant therein, why declare that execution might issue against the defendant in the judgment and the security, without any other proceeding thereon? An execution is the remedy provided by law to enforce the sale of property bound for its

payment, either by the terms of some statutory enactment or otherwise. The property of the security on the stay of execution in this state, is bound for the payment of the judgment, by force of the statute, and that is the fair and legitimate interpretation thereof, when it declares that the execution shall issue against the defendant in the judgment and the security without any *other proceeding thereon.* Why authorize the excution to issue against the security without any other proceeding thereon, if it had not been intended that his property should be bound for the payment of the judgment as well as that of the defendant therein? If the property of the security on the stay of execution was not intended to be bound for the payment of the judgment, from the time of his signing his name to the stay-bond or recognizance in the clerk's office, there would seem to be no good reason for an execution to issue against him as well as the principal defendant to collect the amount due on that judgment. Besides, if the property of the security on the stay of execution, is not bound for the payment of the judgment from the date of the stay, the plaintiff, who has been delayed in the collection of his judgment for sixty days, derives no benefit from the security, during the time of the delay, and has no additional property bound for its payment during that time. The statute clearly contemplates that the property of the security shall be bound for the payment of the plaintiff's judgment, in authorizing an execution to issue against him therefor, by some "proceeding." What is that proceeding? Evidently that good and sufficient security shall be entered either in open court, or in the clerk's office, within four days, for the payment of the judgment and costs within sixty days. The act of 1799 did not require that a bond should be given, as the Code now does, but that good and sufficient security must be entered for the payment of the judgment and costs; that is the "proceeding" which binds the property of the security to pay the judgment according to the statute, and when that proceeding is had, the property of the security is bound for the payment of the plaintiff's judgment just as it then stands, from the date of that proceeding, be-

cause the execution is authorized by the statute to be issued against the security without any "other proceeding thereon." The execution must necessarily relate back to that proceeding of entering the security in the clerk's office for the payment of the judgment, for its foundation and legal support, for the simple reason that it has no other, and if *that* proceeding does not bind the property of the security on the stay-bond so as to authorize the plaintiff to have execution against him, then there is no legal authority for the plaintiff in the judgment to have execution against the security on the stay thereof after the expiration of the sixty days. It is that proceeding in the clerk's office, before referred to, and that alone, which binds the property of the security and authorizes the plaintiff in the judgment to seize and sell the same under an execution against him in satisfaction of that judgment. If that proceeding in the clerk's office, as declared by the statute, does not bind the property of the security for the payment of the plaintiff's judgment, then it is not bound at all, and there is no legal authority for issuing an execution against the property of the security to satisfy the plaintiff's judgment, but the statute recognizes that proceeding as binding the property of the security, when it declares that execution may issue against the defendant in the judgment and the security, "without any other proceeding thereon." The statute does not declare that the property of the security shall be bound for the payment of the judgment from the time of issuing, or of levying the execution, and the only logical conclusion is, that the property of the security is bound for the payment of the judgment from the time of signing the bond, without any other proceeding for that purpose. Such it is believed has been the contemporaneous construction of the act of 1799, and that the bench and bar, and people of the state, have acquiesced in that construction up to the present time.

2. But be that as it may, the deeds under which the claimant claims title to the property levied on, were executed by the defendant to him, through his agents, A. M. & B. H. Thrasher, (the claimant not being present) who were both

securities on the stay-bond, and as a matter of course had full knowledge of its existence, and who were the parties to it, as well as of the existence of the judgment on which the execution was stayed. Notice to the claimant's agents, through whom the property was purchased from the defendants, was notice to him of the above recited facts, inasmuch as they must necessarily have had notice of them at the time of the alleged trade and conveyance of the property : Code, section 2200. In point of fact, it would seem from the evidence in the record, that the claimant had but little to do in negotiating the trade for the property, and taking the conveyances therefor; that part of the business appears to have been managed entirely by Thrasher & Thrasher, who acted as his agents, and who were two of the securities on the stay-bond, and who must have known at that time, as his agents, all about the condition of the property, and of the incumbrances that were upon it, and must have remembered it at the time.

3. As to the property levied on as the property of Early W. Thrasher, the principal defendant in the judgment, and conveyed by him to J. J. Thrasher, and who executed a bond for titles therefor to W. L. Thrasher, who assigned said bond for titles to Hayden, the claimant, it appears that all the purchase money had not been paid for the property at the time of the assignment of the bond to the claimant on the 2d of June, 1875. If the conveyance of the property by Early W. Thrasher to J. J. Thrasher, was a fair and *bona fide* transaction, and not intended to hinder and delay the collection of the plaintiffs' demand against him, then the title to that property is in J. J. Thrasher, and not in the claimant, who had no legal right or authority, so far as the record shows, to claim J. J. Thrasher's property for him. The evidence in the record is, that the defendant, E. W. Thrasher, continued in possession of the property until after the date of the judgment against him, and up to a short time before the levy was made thereon by the sheriff.

4. The decree which the chancellor signed was not as formal as it might have been, or good pleading may have re-

quired, but it was a substantial compliance with the Code, referring to the verdict, and adopting it as the decree of the court, it was sufficiently certain, for all legal and practical purposes.

In view of the evidence contained in the record, and the law applicable thereto, there was no error in the judgment of the court in overruling the claimant's motion for a new trial.

Let the judgment of the court below be affirmed.